**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS-EASTERN DISVISION**

| | | |
|---|---|---|
| RAYMOND SIMPSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | 17-cv-02564 |
| | ) | |
| STEINER ELECTRIC COMPANY, | ) | Jury Trial Demanded |
| | ) | |
| Defendant. | ) | |

**COMPLAINT**

NOW COMES the Plaintiff, RAYMOND SIMPSON, by and through his attorneys, THE LAW OFFICE OF JEFFREY FRIEDMAN, P.C. and seeks redress for the disability discrimination suffered by the Plaintiff in violation of the laws of the United States and in support thereof alleges upon information and belief as follows:

1.     Jurisdiction of this court is invoked and authorized pursuant to Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12117 (referred to herein as "ADA"), and pursuant to the principles of pendent jurisdiction.

2.     Venue is proper in the Northern District of Illinois because the actions complained of occurred at Steiner Electric Company (hereinafter "STEINER"), located at 1250 Touhy Avenue, Elk Grove Village, IL 60007.

3.     Plaintiff has filed a timely "Charge of Discrimination" with the Equal Employment Opportunity Commission, and has received his Right to Sue Letter.

4.     Plaintiff RAYMOND SIMPSON ("SIMPSON") is a resident of Aurora, Illinois, within this District.

5.     Defendant STEINER is headquartered in Elk Grove Village, Illinois and is a leading electrical supply company servicing Illinois and Northwest Indiana.

1

6.     STEINER is an "employer" in the State of Illinois, within the meaning of the ADA.

7.     On May 2, 2005, SIMPSON began his employment with STEINER as a van driver, and in or about 2008 SIMPSON was promoted to head of the receiving department.

8.     On September 26, 2016, SIMPSON'S employment with STEINER was terminated.

9.     During his employment with the Defendant, SIMPSON fulfilled his duties in an exemplary manner.

10.     In or about 1995, SIMPSON was diagnosed with diabetes.  In or about 2006, SIMPSON was diagnosed as an insulin-dependent diabetic.

11.     Commencing with his diagnosis of insulin-dependent diabetes, SIMPSON regularly monitored his glucose by the use of a Dexcom Continuous Glucose Monitoring device ("Monitor").

12.     The Monitor uses a small discrete sensor located just underneath the skin to measure SIMPSON'S glucose levels, and this data is transmitted wirelessly to the display.

13.     The Monitor does not deliver insulin.

14.     Insulin-dependent diabetes is a disability under the ADA. *Lawson v. CSX Transp., Inc.*, 245 F.3d 916, 923 (7th Cir. 2001); *Nawrot v. CPC Int'l*, 277 F.3d 896, 905 (7th Cir. 2002).

15.     At all relevant times hereto, SIMPSON was qualified to perform the essential functions of his job, notwithstanding his disability of insulin-dependent diabetes.

16.     In or about February 2015, SIMPSON experienced a hypoglycemic episode during his work shift.  At such time, the Monitor was fully functioning.

17.    On or about March 24, 2015, and as a result of SIMPSON's hypoglycemic episode, STEINER, by and through its Vice President of Human Resources, sent SIMPSON an email which imposed certain requirements on SIMPSON, including, to "find a better approach for you to monitor and manage your diabetes."

18.    On or about March 24, 2015, STEINER required, among other things, that:

"Ray will check that his monitor is working each day. If it is not, he will inform his manager. If Ray's monitor is not working, he will not operate forklifts until the monitor is working again. Ray is responsible for getting his monitor repaired or replaced in a timely manner."

19.    At all relevant times hereto, SIMPSON checked that his Monitor was working each day.

20.    At all relevant times hereto, SIMPSON did not operate a forklift when his Monitor was not working.

21.    At all relevant times hereto, SIMPSON fully complied with the terms contained in STEINER'S requirements dated March 24, 2015.

22.    On September 16, 2016, SIMPSON was scheduled to undergo a medical procedure.

23.    In anticipation and preparation of this medical procedure, SIMPSON was directed by his physician to eat very lightly on September 14, 2016 and not to eat at all on September 15, 2016.

24.    On September 14, 2016, SIMPSON's Monitor was fully functioning, and SIMPSON was in full compliance with the terms set forth in STEINER's requirements dated March 24, 2015.

25.    On September 14, 2016, SIMPSON experienced a hypoglycemic episode.

3

26.     On September 14, 2016, STEINER, through its employee or agent, contacted paramedics who arrived and stabilized SIMPSON. SIMPSON was not taken to the hospital and remained at work for the duration of his shift.

27.     On September 26, 2016, SIMPSON's employment was terminated.

## COUNT I

## DISABILITY DISCRIMINATION IN EMPLOYMENT IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990

28.     Plaintiff repeats and re-alleges paragraphs 1 through 27, as if fully stated herein.

29.     The ADA prohibits an employer from discriminating against a qualified individual on the basis of disability in regard to advancement, or discharge of employees, and other terms, conditions, and privileges of employment, among other things. 42 U.S.C.A. § 12112(a).

30.     The ADA further provides that it is unlawful for an employer to refuse to make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of the business. 42 U.S.C.A. § 12112(b)(5)(A).

31.     At all times relevant hereto, STEINER failed to make reasonable accommodations to SIMPSON in light of his disability.

32.     On or about September 26, 2016, STEINER terminated SIMPSON'S employment in violation of the ADA.

33.     By willfully and intentionally terminating SIMPSON, STEINER demonstrated that it condoned, fostered, promoted and did not discourage or prohibit violations of the ADA.

34.     The violation of the SIMPSON'S rights under the ADA by STEINER has caused SIMPSON to suffer severe and grievous damages, including lost income, and emotional pain and anguish.


## COUNT II
## WRONGFUL TERMINATION IN VIOLATION OF ILLINOIS PUBLIC POLICY

35.     Plaintiff repeats and re-alleges paragraphs 1 through 27, as if fully stated herein.

36.     SIMPSON'S termination was the result of him suffering a hypoglycemic episode at work.

37.     SIMPSON'S hypoglycemic episode was caused by and directly related to his disability (insulin-dependent diabetes).

38.      "Public policy concerns what is right and just and what affects the citizens of the State collectively.  It is to be found in the State's constitution and statutes and, when they are silent, in its judicial decisions."  *Palmateer v. Int'l Harvester Co.*, 85 Ill. 2d 124, 130 (1981).

39.     Termination of employment based upon a recognized disability is prohibited by the ADA, and by the Illinois Human Rights Act ("IHRA").  775 ILCS 5/1-101 *et seq*.  See also *Rozsavolgyi v. City of Aurora*, 2016 IL App (2d) 150493, ¶ 26-28.

40.     STEINER'S termination of SIMPSON because of his disability is in violation of a clear mandate of Illinois public policy, as set forth by Illinois judicial decisions and the IHRA.

41.     STEINER'S termination of SIMPSON caused SIMPSON to suffer severe and grievous damages, including lost income, and emotional pain and anguish.

WHEREFORE, SIMPSON respectfully requests a judgment against STEINER as follows:

A.    Compensatory damages for the back pay, front pay, and economic and employee benefits lost by Plaintiff as a direct and proximate result of STEINER'S termination of Plaintiff based on his disability, and interest thereon;

B.    Compensatory damages for the emotional stress and pain and suffering suffered by Plaintiff as a direct and proximate result of STEINER'S actions that resulted in unexpected and extended unemployment for Plaintiff;

C.    Punitive damages;

D.    Reasonable attorney's fees and costs; and

E.    Such further relief as is equitable and just.

Respectfully Submitted,


s/ Jeffrey Friedman
One of the attorneys for Plaintiff


LAW OFFICE OF JEFFREY FRIEDMAN, P.C.
Attorneys for Plaintiff
120 S. State Street, Suite 400
Chicago, Illinois  60603
(312) 357-1431

6